JOSIE FEITL, Admx.

*v.*

THE CHICAGO CITY RAILWAY COMPANY.

*Opinion filed October 24, 1904.*

1. WITNESSES—*extent of removal of disqualification of interest by Evidence act.* The Evidence act of 1867 removed the disqualification of witnesses on the ground of interest, generally, but in suits by administrators retained the disqualification where the witness is *directly* interested in the event of the suit.

2. SAME—*witness may be directly interested in suit though not a party.* A witness may be directly interested in the event of the suit although not a party thereto, if he will either gain or lose by the direct legal operation and effect of judgment or if the record will be legal evidence for or against him in some other action.

3. SAME—*judgment against master for negligence not conclusive against servant.* A judgment against a street railway company for negligence is not conclusive against the servant who was in charge of the car which caused the injury, and the record of the suit is not admissible in an action against the servant except to show the fact of the entry of the judgment and the amount thereof, after the liability of the servant is otherwise established.

4. SAME—*servant is not disqualified as a witness for master on ground of liability over.* Since the passage of the Evidence act of

1867 a servant is not disqualified as a witness for the master in an action for negligence upon the ground of liability over to the master in a subsequent action. (*Illinois Central Railroad Co.* v. *Weldon,* 52 Ill. 290, adhered to.)

5. SAME—*servant may testify for master in suit by administrator.* In a suit by an administrator against the master the servant whose alleged negligent act caused the injury is not so "directly interested in the event of the suit," within the meaning of section 2 of the Evidence act, as to disqualify him as a witness.

6. EVIDENCE—*extent to which record of judgment is admissible against strangers.* As against strangers, the record of a judgment is admissible to prove that the judgment was rendered and for what sum, but is not admissible to prove the truth of any fact upon which the judgment was founded.

7. TRIAL—*exception should be taken at time ruling is made.* An exception, taken after judgment, both to the decision of the court in overruling the motion for new trial and in rendering judgment, is improper, since an exception should be taken to each ruling or decision as it arises on the trial, and the bill of exceptions must show that fact.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

JONES & LUSK, for plaintiff in error.

WILLIAM J. HYNES, JAMES W. DUNCAN, and C. LEROY BROWN, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiff in error, as administratrix of the estate of Hynek Feitl, deceased, brought suit in the superior court of Cook county against the defendant in error for wrongfully causing his death. The declaration consisted of five counts, and alleged the ownership and operation by the defendant of a street railway and an electric motor car upon Forty-seventh street, in the city of Chicago; that Hynek Feitl, on March 3, 1901, was riding in a buggy upon said street and

exercising due care for his own safety, and that said car ran upon and against said buggy and killed him. The first count charged defendant with negligence, generally, in the management of the motor and motor car. The second alleged a failure to ring a bell or give any warning of the approach of the car. The third charged the defendant with carelessly and negligently running the car at a high, reckless and dangerous rate of speed. The fourth alleged that the servant of defendant in charge of the car failed to keep a strict watch and lookout over the track, and the fifth alleged that the defendant, by its servant, the motorman in charge of the car, recklessly, wantonly and willfully ran said car against, over and upon said Hynek Feitl and killed him. The plea was the general issue, and upon a trial there was a verdict of not guilty, with the following special findings of fact: First, that the evidence did not show that the deceased was using ordinary care for his own safety; second, that he was guilty of a failure to exercise ordinary care for his own safety that proximately helped to bring about the injury which caused his death; third, that the injury was caused solely by negligence in the manner in which the horse and vehicle was driven; fourth, that there was no evidence as to who was driving the vehicle. Plaintiff moved for a new trial, and the motion was overruled and judgment was entered against her for costs. Upon a writ of error from the Appellate Court for the First District the judgment was affirmed, and the writ of error in this case was sued out to review the judgment of the Appellate Court.

The principal questions argued by counsel for plaintiff in error relate to the admission by the trial court of the testimony of the motorman and the giving of an instruction that there was no evidence of wantonness or willfulness on the part of the defendant, and therefore the jury should disregard the fifth count of the declaration.

At the time of the accident Hynek Feitl and another man were driving east in a buggy on Forty-seventh street, in the city of Chicago, at about 7:15 o'clock on the evening of

March 3, 1901. The men were going eastward, and the evidence tended to prove that the buggy was driven from the north side of the street south-easterly upon the track and across the course of the approaching car. It was in the evening and there were no street lights, but that fact was not material, for the reason that the motorman saw the buggy when it came upon the track a short distance east of California avenue and probably about fifty feet from the car. The motorman applied the brakes, but the car collided with the buggy and Feitl was thrown out and killed. The car came to a stop just after the collision and before it had passed the deceased.

The only evidence on the part of the plaintiff as to the accident consisted of the testimony of a passenger who was in the car, and who testified that the first thing which drew his attention to the buggy was the jerking from the motorman putting on the brakes; that he was sitting inside, in front, and looking out of the window; that the first thing he saw was the wheels of the buggy about four or six feet ahead of the car and that he heard no bell. On the part of the defendant George Pett was called as a witness and testified that he was the motorman of the car. He was then objected to by the plaintiff as an incompetent witness because he was liable over to the defendant for any damage he may have caused. The objection was overruled and plaintiff excepted. The witness then testified as to the speed of the car, the condition of the machinery, the men driving on the track, what he did to stop the car, and the situation of the car and the deceased after his death. The opinion of the Appellate Court was that the trial court erred in ruling on the competency of the witness, but that the other evidence in the case was such that the jury could not reasonably have rendered any other verdict, and the judgment was therefore affirmed.

At the common law one who had a personal interest in the success or defeat of one of the litigant parties was thereby disqualified as a witness. If he had a legal existing interest, however small, he was incompetent to testify. The

fact that he had an interest in the question to be decided or a bias on the subject of the suit, or hoped to obtain some benefit from the result of the trial, was no objection to his competency, so that in two actions for the same trespass or on the same policy of insurance, or similar cases, the defendant in one case was a competent witness for the defendant in the other. It was generally said that if the witness would immediately gain or lose by the event of the suit, or if the verdict could be given in evidence either for or against him in another suit, he was incompetent. Under those rules it was held that a servant who would be liable over to his master was incompetent as a witness where the master was charged with liability for his negligence. The question arose in *Galena and Chicago Union Railroad Co.* v. *Welch,* 24 Ill. 31, which was an action against a railroad company for damages resulting from the washing away of a culvert. It was held that the engineer who planned and superintended the erection of the culvert was not a competent witness for the company until he had been released by it, because he would be liable over to the company for the consequences of his negligence, and it would therefore be for his interest to defeat the action. It was decided, in accordance with all the authorities, that the witness being neither a party nor privy to the record could not be concluded as to the matters determined by it; that it would not establish any liability against him, and that in an action against him by the railroad company for negligence the record would not be evidence of the fact. In such an action, after the negligence of the witness had been established by other evidence and it had been proved that the injury resulted from such negligence, the record would be admissible on the question of the damage sustained by the railroad company, although it would not be conclusive on that question. This remote and contingent interest was deemed sufficient to render the witness incompetent unless released. Again, in *Chicago and Rock Island Railroad Co.* v. *Hutchins,* 34 Ill. 108, where the suit was for negligence in killing stock by an engine, and it was alleged that there was

a failure to ring the bell or sound the whistle, as required by law, it was held that the engineer was not a competent witness to testify whether the bell was rung at the crossing where the stock was killed. The decision was upon the ground that the witness would be liable over to the railroad company if it was compelled to respond in damages for his non-performance of duty.

The record of a judgment is always admissible, even between strangers to it, to prove that the judgment was rendered and for what sum, but it would not be admissible to prove the truth of any fact on which the judgment was founded. On that subject Greenleaf says: "Thus, the record of a judgment against the master for the negligence of his servant would be admissible in a subsequent action by the master against the servant to prove the fact that such a judgment had been recovered against the master for such an amount and upon such and such allegations, but not to prove that either of those allegations was true, unless in certain cases where the servant or agent has undertaken the defense, or, being bound to indemnify, has been duly required to assume it." (1 Greenleaf on Evidence, sec. 404.) In those cases the witness would not have been concluded by the event of the suit as to any fact involved in it and it would not have been admissible to establish liability against him, but the fact that it might have been used against him on the question of damages after his liability had been otherwise established was sufficient to render him incompetent.

After the passage of the act of 1867, removing the disqualification of witnesses on account of their interest in the event thereof, as parties or otherwise, except in certain enumerated cases, the same question came before the court in *Illinois Central Railroad Co.* v. *Weldon,* 52 Ill. 290. That was an action by the administrator of Christopher Weldon to recover damages for wrongfully causing his death. An employee of the defendant was rejected as a witness by the trial court until he had been released by the defendant, on the ground of a liability over. It was said that by the common law and under

the authority of *Galena and Chicago Union Railroad Co.* v. *Welch, supra,* a witness so situated was incompetent prior to the passage of that act, but it was held that the act removed the disqualification and disability, and that the witness should not have been rejected on the ground of interest or the defendant compelled to execute a release before he was permitted to testify.   Since the decision of that case, in 1869, it has always been regarded as establishing the law on the subject, and it has never been held that a servant is incompetent as a witness in an action against his master on account of a liability over, in a subsequent action by the master.   In the numerous cases which have come to this court since that decision, engineers, firemen and other employees have testified in behalf of their employers as to the ringing of bells, the speed of cars or trains, and any other matter in issue, and their competency as witnesses has never been disputed.   A decision recognized as the law and acquiesced in for so long a time ought not to be overruled unless clearly wrong.   The argument against it now is, that the witness was not competent because the adverse party sued as administrator, and that the court must have overlooked the provision of section 2 of the act of 1867 that no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein, of his own motion or in his own behalf, when any adverse party sues or defends as the administrator of any deceased person, except in the five classes of cases therein specified.   In this case the objection to the testimony of the witness was on the ground that he was incompetent to testify at all, and the ruling of the court was not wrong, even if he was incompetent to testify as to particular things.   The witness did, in fact, testify as to some matters concerning which he was competent under the exceptions, although those matters were not of much importance.   Furthermore, there was no exception taken at the time to overruling the motion for a new trial, but the exception was after judgment, both to the decision of the court in denying the motion and to the rendition of the judgment.   Exceptions cannot be taken in that

way, but each exception must be taken to each ruling or decision as it arises upon the trial. An exception must be taken at the time the decision is made and the bill of exceptions must show that fact. *East St. Louis Electric Street Railroad Co.* v. *Cauley,* 148 Ill. 490.

Waiving, however, those objections to the consideration of the question, we do not think that the decision of the trial court was erroneous. It is not to be presumed that the court, in deciding the case of *Illinois Central Railroad Co.* v. *Weldon, supra,* overlooked the provisions of the act upon which the decision was based, or that such an inference arises merely from a failure to comment at length upon the various provisions of the act. The general purpose of the act was to remove disqualifications on the ground of interest, leaving the interest to be shown for the purpose of affecting the credibility of the witness. The court, in the *Weldon case,* referred to the fact that the existence of the common law rule had been regretted by the courts and approved the enlightened policy which led to the abolition of the rule. It is well known that the rule had been inefficient in obtaining disinterested testimony; that there were numerous ways in which witnesses might be interested in the event of a suit and yet have no legal interest therein, and that with some witnesses a slight interest would tend to perjury, while with others the greatest interest would not have that effect. The disqualification was, however, retained in certain actions, including suits by administrators, as against any party to the action "or person directly interested in the event thereof," except in certain specified cases. The question, therefore, in this case is whether the witness was "directly interested in the event" of the suit.

One who is not a party to a suit may have a direct interest in the event of it, for the reason that it is prosecuted for his benefit or that the judgment will immediately inure to his advantage. The test of such interest is whether he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. (1 Greenleaf on Evidence,

secs. 390, 404.)   And in the latter section the interest in the record is limited to cases where such record is admitted to prove the truth of the facts upon which the judgment was founded, in order to acquire a benefit or repel a loss.  (See also, Starkie on Evidence, 24; 1 Best on Evidence, 137.) It is manifest that the record of a suit against the master, which is only admissible to show that a judgment was rendered and the amount of it, is not of that character.  If the direct legal effect of a judgment will be to establish a claim against the witness, he has a direct interest in the event of the suit within the meaning of the statute.  But that can only be so where the judgment will be evidence against the witness of his liability.  As already shown, a judgment against the defendant in this case would be no evidence, in a suit against the motorman, that he had been negligent or that such negligence was the cause of the accident.  In a case where an agent of one party had endorsed payments upon a written contract as having been received by him, it was held that he was incompetent, as a witness for his principal, to testify against the widow and heirs of the other party that he did not receive the money, on the ground that if his principal was defeated he would have an immediate action against the witness for the amount of the payment.  (*Bruner* v. *Battell,* 83 Ill. 317.) In that case there was no dispute or controversy as to the endorsement having been made by the agent, and either he or the other party to the contract was liable to his principal for the amount.  In *Butz* v. *Schwartz,* 135 Ill. 180, it was charged that the note sued upon was obtained by fraud and circumvention or was a forgery.  The suit was by the administratrix of a deceased assignee, and if the defense was successful the payees would be liable over to the assignee.  It was held that the fraud and circumvention or forgery, being the work of two witnesses, if established, would render them liable to the payees of the note and that a judgment against the plaintiff would be conclusive against them.  On that ground it was held that they were "persons having a direct interest in the event of the suit," within the meaning of the statute.  If

the judgment would be conclusive against them and establish their liability there can be no doubt that they had a direct interest in the suit.   In 1 Phillips on Evidence, 66, it is said that at common law witnesses who were neither parties to the record nor had any direct interest in the event of the suit were often rendered incompetent by reason of an indirect interest in the record with regard to some subsequent suit, although they could derive no immediate benefit or disadvantage from the determination of the particular suit.   In this case a judgment against the defendant would not be evidence of anything for the purpose of establishing a liability of the witness.   It is a fundamental principle that no party can be concluded without being heard, and those, only, are concluded who are adverse parties, between whom the matter in controversy is adjudicated.   A person not having a right or opportunity to make a defense, control the proceedings, examine and cross-examine the witnesses and appeal from the judgment, if an appeal is allowed by law, or sue out a writ of error, is not concluded by the judgment.   (24 Am. & Eng. Ency. of Law,—2d ed.—735.)   Of course, if the defendant succeeded in this suit it would have no action over against the witness because there would be no foundation or basis for a claim, but if it failed it would be required to prove the liability of the witness in a subsequent action, without regard to the judgment.   If the witness should be subsequently sued by the plaintiff for the same wrong, the judgment would be neither evidence for nor against him.   He would not be relieved from liability by the judgment.   Where one is responsible over to another for whatever may be justly recovered in a suit against the other, and is duly notified of the pendency of the suit and requested to take upon himself the defense of it, and is given an opportunity to do so, the judgment, if obtained without fraud or collusion, will be conclusive in a subsequent suit against him.   (24 Am. & Eng. Ency. of Law,—2d ed.—740.)   In *Drennan* v. *Bunn,* 124 Ill. 175, it was held that where a person is responsible over to another, and he is notified of the pendency of a suit involving the subject mat-

ter of the indemnity and requested to defend it, he is not to be regarded as a stranger to the suit, and any judgment obtained without fraud against the party to be indemnified will be conclusive against the party so notified, whether he appeared or not. The witness in this case was not in that position and his interest in the event of the suit was only consequential or indirect, as explained by the authorities. The act of 1867 removed the disqualification of witnesses on the ground of interest, generally, and in the case of a suit by an administrator retained the disqualification only where the witness is directly interested in the event of the suit.

We see no reason for overruling the former decision, and conclude there was no error in the ruling of the trial court.

There was no evidence tending to prove wanton or willful conduct on the part of the defendant or any of its agents or servants. Every witness to the occurrence testified to the sudden application of the brakes, and there was no evidence of any intention or purpose not to discharge any duty incumbent upon the defendant. The instruction to that effect was therefore proper.

The trial court refused to give to the jury the twenty-fourth, twenty-fifth and twenty-sixth instructions which were tendered by the plaintiff. The twenty-fourth directed a verdict for the plaintiff, although the deceased was guilty of negligence contributing to the accident, if the evidence showed that the motorman managed the car in a wanton or reckless manner. It was properly refused for want of any evidence on which to base it. The twenty-fifth was an abstract proposition of law concerning the relative rights of street car companies and persons traveling on the street. It was not error to refuse it for the reason that it was abstract and it was also inaccurate and misleading. The twenty-sixth authorized a recovery for mere negligence on the part of the motorman, notwithstanding contributory negligence on the part of the deceased. It was properly refused.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*