## ELIZA BRUNER *et al.*

### *v.*

## JOSEPH BATTELL, EXR. Etc.

1. EVIDENCE—*of deceased party, when non-resident defendant is let in to defend after decree.* Where a complainant in a bill for specific performance against a non-resident defendant, on default, testifies to payment of the purchase money, before the master, which is reported, and, after decree and the complainant's death, the defendant is allowed, under the statute, to make a defense, the master's report of the complainant's testimony is admissible in evidence, and it is error to refuse the same.

2. If a master's report of proofs taken is competent evidence on the original hearing, on default of the defendant, it can not be rendered incompetent because the defendant is subsequently permitted to come into court and make a defense.

3. DECREE—*opening, to allow defense by a non-resident.* Where a non-resident defendant, whose default has been taken, is allowed, under the statute, to make a defense, the original decree stands until it is vacated on the final hearing, and it is presumed to be correct until overcome by evidence, and the court, on the final hearing, should consider all the evidence, as well that in the record as that which may be adduced after the defendant is let in to defend.

4. WITNESS—*competency of, to prove transaction with a deceased person, as against heirs.* On bill for specific performance, the agent of the vendor

is not a competent witness, after the vendee's death, as against his widow and heirs, to testify that a payment, indorsed by him upon the contract, was made by mistake, and that it was not, in fact, made. If the testimony of the deceased vendee, taken in his lifetime, before a master in chancery in the cause, is admitted in evidence, showing the payment, then such agent is competent to testify in answer to it.

5. SAME—*competency of agent before act of* 1867. An agent is a compe-tent witness to prove that he acted according to the directions of his princi-pal and within the scope of his duty, but if the cause depends upon the question, whether he has been guilty of some tortious act, or some negli-gence in executing the orders of his principal, in respect of which he will be liable to the principal if the latter fails in the action pending against him, then the agent is not a competent witness for the principal, at common law.

APPEAL from the Circuit Court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Messrs. RICHOLSON & SNOW, for the appellants.

Mr. D. P. JONES, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

On the 26th day of November, 1867, Joseph Battell, a resi-dent of the city of New York, as executor of the last will and testament of Joseph Battell, deceased, through one Levi H. Rood, of La Salle county, Illinois, his attorney in fact, entered into a contract with Franklin Bruner, also of La Salle county, Illinois, whereby Battell sold and agreed to convey to Bruner a certain tract of land, upon the completion of certain payments to be paid by Bruner to Battell. It is agreed by both parties that these payments were all made except as to the sum of $500, the question of the payment of which was the chief contro-versy in the court below. Bruner claimed that this sum, as well as the residue of the purchase money, was paid to Rood, and Battell claimed that it had never been paid.

Bruner, having (after making, as he claimed, full payment of the price he agreed to pay for the land) demanded a deed to be executed to him, and been denied, filed his bill in chancery, against Battell, in the circuit court of La Salle

county. Affidavit was filed and summons returned showing that Battell was a non-resident, upon which he was duly notified of the pendency of the suit by publication. Battell failing to appear at the return term of the writ, decree was rendered against him by default, and the court referred the cause to the master to take and report the proofs. The master made report, pursuant to the order of the court, at the February term, 1871, upon which the court decreed in favor of Bruner in conformity with the prayer of his bill.

The evidence in the master's report consisted, in part, of the testimony of Bruner, who swore to the payment of the full amount due from him to Battell before he demanded the execution of a deed.

About one month after this decree was rendered, Bruner died intestate. Near two years afterwards, Battell, through Rood, caused a petition to be filed, which was sworn to by Rood, praying that Battell be allowed to appear and answer the original bill, which was allowed by the court.

Upon the hearing, after answer was thus filed by Battell, Bruner's widow and heirs at law were made parties complainant, and they offered to read in evidence the master's report of evidence taken on the original hearing, but the court ruled that the report was inadmissible in evidence, and excluded it.

The contract between Bruner and Battell was reduced to writing and signed in duplicate, and on the copy held by Bruner were indorsements of payments, in the handwriting of Rood, Battell's attorney in fact, to more than the amount due thereon. The court, over complainants' objection, permitted Rood to testify on behalf of Battell, and deny that he had received from Bruner the $500 in dispute, and that the indorsement of one of the payments made by him on the copy of the contract held by Bruner was made by mistake.

It appears that Bruner and Rood were the only persons having personal knowledge in regard to the payments, and the effect of the ruling was to deny complainants the benefit of Bruner's evidence, and to determine the case by the indorsements on the contract and Rood's explanations alone.

It would seem clear that, if the master's report containing Bruner's evidence was properly excluded, Rood's evidence should also have been excluded.

We think there can be no serious question but that, prior to the statute of 1867 permitting persons to testify notwithstanding their interest in the subject matter of litigation, Rood would have been quite as incompetent to testify that he did not receive the $500 as would have been Bruner to prove that he paid it him.

The principle excepting agents from the rule disqualifying persons from being witnesses on account of their interest in the subject matter of litigation, has its exceptions also. "He is," says Greenleaf's Evidence, sec. 417, "safely admitted in all cases to prove that he acted according to the directions of his principal and within the scope of his duty, both on the ground of necessity and because the principal can never maintain an action against him for any act done according to his own directions, whatever may be the result of the suit in which he is called as a witness; but if the cause depends on the question, whether the agent has been guilty of some tortious act or some negligence in the course of executing the orders of his principal, and in respect of which he would be liable over to the principal, if the latter should fail in the action pending against him, the agent, as we have seen, is not a competent witness for his principal without a release." See, also, secs. 394, 5, 6, 7; *Frink, impleaded, etc.* v. *The People,* 43 Ill. 27; *Walters* v. *Witherell,* id. 388; *Chicago and Rock Island Railroad Co.* v. *Hutchins,* 34 id. 110; *Galena and Chicago Union Railroad Co.* v. *Welch,* 24 id. 31.

The principle is well illustrated by *Fuller* v. *Wheelock,* 10 Pickering, 135, cited by counsel for complainant, and, except as to the *form* of the proceeding in which the question arose, which we deem unimportant, the question there discussed and that before us are the same. That was assumpsit on account, and for the amount due on a promissory note. The defendant gave in evidence the receipt, in full, of one White, the agent of the plaintiff. Plaintiff called White as a witness to prove that

the giving of the receipt and tearing the name of the defendant from the note was a mistake, and that the money was not, in fact, paid by defendant. The court, as to the competency of White to make this proof, said: "The question, then, is, was the witness incompetent by reason of interest, and the court are of the opinion that he was. He was the acknowledged agent of the plaintiff to receive the money; his receipt was *prima facie* evidence that he received it, and the plaintiff had given him no release. If the plaintiff failed in this suit, he would have an immediate action against the witness for money had and received—an action which a recovery in this suit would bar. If the plaintiff should prevail in this suit, the defendant would have no action over against the witness to recover back the money, without being obliged to prove not only that he had paid the money according to the terms of the receipt, but also that the witness had been guilty of some breach of trust towards the party of whom the money was received, so as to bring the case within the principle of *Ferver* v. *Shearer*, 7 Mass. 23, otherwise the witness, being duly authorized to receive the money, would be responsible to his principal only, and not to the defendant. We think, therefore, that the direct interest on the one side was not balanced by an equal interest on the other side, and that he was not a competent witness."

The court further said, that the witness did not come within the exception in regard to agents; that the considerations inducing such exception "can not apply where a witness is called to testify to facts out of the usual and common course of business, and to contradict and deny the effect of those acts which he appears to have done as such agent." The act of 1867, however, would have removed the disability of Rood by reason of his interest, had he testified while Bruner was living; but when he testified, Bruner was dead, the suit was being prosecuted by his widow and heirs, and the matter of his evidence comes within none of the exceptions in that statute, which allows an interested party to testify, notwithstanding the suit is being prosecuted by the representatives of a deceased per-

son, if we are to consider the report of the master in chancery as properly excluded. If the report had been in evidence, Rood's testimony would have been competent in answer to that of Bruner, within the spirit if not the letter of the third exception to the 2d section of the act of 1867.

It necessarily follows that, in our opinion, the court erred in admitting Rood's evidence, after having excluded the master's report of Bruner's evidence.

But we are also of opinion that the court erred in excluding the master's report of Bruner's evidence.

As we infer from the argument of appellee, the master's report of Bruner's evidence was excluded upon the assumption that the defendant was denied the opportunity to appear and cross-examine the witness, when he testified before the master. This, as we think, is a misapprehension of the theory under which evidence is, in such cases, taken by the master.

The defendant had all the notice to which the law gave him the right, as a non-resident. So far as the subject matter of litigation was concerned, he was, theoretically, before the court. He was entitled to answer if he chose to do so, and when he did not do so he is presumed to have waived the right. By waiving the right and permitting a default, he waived the rights incident to a contest upon an answer. It was said by this court in *Moore et al.* v. *Titman*, 33 Ill. 366, that " it is only in contested cases, where a reference is made to report evidence or to hear proofs and report facts, that the rule [requiring notice to be given the defendant to appear before the master] is applicable. It is true, the parties being in court, they have the right, in a case where the bill is taken as confessed, to appear before the master, on a reference, if they think proper. But in such a case the practice does not require notice." When objections of like tenor have been sustained, it has not been because, by reason of the peculiar circumstances, the party was, in fact, unable to cross-examine the witness, but because, in legal presumption, he did not have such notice as made it his duty to exercise the right, if he thought fit.

There seems to be no objection urged why the master's re-

port was not competent evidence on the original hearing on the default; and, assuming this to be so, upon what principle does evidence which was then legal become illegal, simply because the defendant subsequently comes into court, and, by its permission, is allowed to make defense? We have several times held, that in such cases the original decree stands until it is vacated by decree on final hearing, and the principle is, that the evidence sustaining the original decree must be overcome by the evidence adduced on the final hearing, before the decree will be changed. It is presumably correct until the contrary is established, and the court, in determining whether it shall be changed, should take into consideration all the evidence, as well that in the record as that which may be introduced on final hearing.

In the present case, and in all other cases where witnesses are examined on a hearing after default, and die before a rehearing, it would work serious injustice and wrong, if proof of their evidence should be excluded on the rehearing simply because they had not been cross-examined. It is far better, in our opinion, that the defendant should suffer the evil that must sometimes befall him in such cases, because of his having been unable to exercise the right of cross-examination, having, as he does, the right to question it and show its falsity, if false it be, by other evidence, than that the benefit of the evidence should be entirely lost.

We are not satisfied that, had the ruling of the court below been in harmony with the views we have expressed, its decree would have been as it was. We prefer, however, to express no opinion upon the weight of the evidence, considering the excluded report as a part of it, as it should have been, as the parties may be able to introduce additional proof, making the right still more clear upon the one side or the other.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE DICKEY, having been of counsel in this litigation, took no part in the consideration of this case.