## Anna B. Sweesy, Individually and as Administratrix of the Estate of Harry M. Hess, Deceased and as Guardian of Harry M. Hess, Jr. (Complainant and Cross-Defendant), Appellant, v. Alfred C. Hoy, et al. (Defendants and Cross-Complainants), Appellees.

### Gen. No. 31,735.

WITNESSES—*when beneficiaries of trust incompetent to testify against administratrix of deceased beneficiary and guardian of his son.* In an action by one as administratrix of the estate of one of four beneficiaries of an active trust, and as guardian of the decedent's minor son by his first wife, to set aside as a fraud on heirs and creditors a conveyance by the trustee conveying, at the request of the three living beneficiaries, title to the trust property ultimately to a new trustee for the benefit of the three living beneficiaries and also the second and living wife of the decedent, and both declarations of trust having been signed and sealed by the respective beneficiaries, the three living beneficiaries, who are parties defendant with the trustees and others, are incompetent to testify for the defendants as being within the prohibition of Cahill's St. ch. 51, ¶ 2, that no person directly interested in the event of a civil action shall testify against an adverse party suing as administrator or guardian when not called by the adversary.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Reversed and remanded. Opinion filed November 23, 1927. Rehearing denied December 9, 1927.

EARL J. WALKER and ALANSON C. NOBLE, for appellant.

CARNAHAN & SLUSSER and GEORGE W. THOMA, for appellees.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This cause was appealed from the superior court to the Supreme Court, and subsequently, on the ground that a freehold was not involved, and there was no other question which would give that court jurisdiction, it was transferred to this court. *Sweesy v. Hoy,* 324 Ill. 319. In the opinion in that case, the general purport of the pleadings is stated, so that it becomes unnecessary in this opinion to reiterate them.

The questions that arose before the master, before whom the evidence was taken, and before the chancellor, who considered the master's report and the exceptions thereto, were whether the complainant, as administratrix of the estate of Harry M. Hess, deceased, husband by a former marriage of complainant's deceased daughter, and as guardian of Harry M. Hess, Jr., his only child, was entitled to an undivided 1-10 interest in the personal property in the hands of the trustees, on the ground that the alleged conveyances from the Chicago Title & Trust Company to Preschern, and from the latter to the Union Bank of Chicago, were fraudulent as to the heirs and creditors of Harry M. Hess, or whether the cross-defendant, Mary Olive Hess, widow of Harry M. Hess, deceased, was entitled to an undivided 1-10 interest in the personal property in question by way of a resulting trust.

To reverse the decree that was entered, and which established a one-tenth interest in the property in the widow, Mary Olive Hess, it is now claimed by the complainant that the defendants and the cross-complainant were permitted to introduce evidence over the objection of the complainant in support of the claim of the alleged resulting trust, which was incompetent and without which there is no sufficient support for the decree.

The complainant, in support of the allegations of her bill proved that on January 12, 1923, one Ahern conveyed the property in question to the Chicago Title & Trust Company; that on the same date, the

Chicago Title & Trust Company executed a written declaration of trust, in which it stated that it would hold the property in question, being 412 acres, more or less, as trustee, "for the ultimate use and benefit of the following named persons according to the respective interests herein set out, to-wit: Carl D. Baker, an undivided 5/10ths interest, Alfred C. Hoy an undivided 3/10ths interest, John L. Hess an undivided 1/10 interest, Harry M. Hess an undivided 1/10 interest;" that the above-named declaration of trust, was signed and sealed by all four of the above-named beneficiaries; that on October 1, 1923, Harry M. Hess died, leaving Harry M. Hess, Jr., a minor child nine years of age, as his only surviving heir, and his widow, Mary Olive Hess, the defendant and cross-complainant; that on October 3, 1923, two days after the death of Harry M. Hess, the Chicago Title & Trust Company, a defendant, upon the written request of Baker, Hoy and J. L. Hess, brother of the deceased, conveyed the title to the property in question to one George T. Preschern, Secretary of the Union Bank of Chicago; that on the same day Preschern conveyed the property to the Union Bank of Chicago, and on the same day, the Union Bank of Chicago executed a trust agreement, in which it was stated that it, the Union Bank of Chicago, would hold the property in question, being 412 acres, more or less, "for the ultimate use and benefit of the following named persons according to the respective interests herein set out, to-wit: Carl D. Baker 5/10ths share, Alfred C. Hoy 3/10ths share, John L. Hess 1/10 share, and Mary Olive Hess 1/10 share;" that the trust agreement in question was signed by the Union Bank of Chicago, and signed and sealed by the four just mentioned beneficiaries; that on April 25, 1924, she, the complainant was appointed administratrix of the estate of her son, Harry M. Hess, deceased, and was at the same time the duly appointed guardian of Harry M. Hess, Jr., his surviving minor son.

Having made that proof, the complainant rested, and thereupon the defendant and cross-complainant, Mary Olive Hess, introduced evidence in defense and in support of her cross-bill in an endeavor to show that, notwithstanding the evidence introduced on behalf of the complainant, administratrix and guardian, she, Mary Olive Hess, was entitled to a resulting trust in a 1/10 interest in the property in question. In making her proof before the master she was permitted to introduce in evidence the testimony of Baker, J. L. Hess and Hoy, all of whom had signed and sealed the original declaration of trust before the death of Harry M. Hess, in which it was stated that Harry M. Hess was entitled to an undivided 1/10 interest in the property in question. They were permitted to testify to an alleged series of facts, all of which transpired prior to the death of Harry M. Hess. As a result of the introduction of that evidence, over the objection of the complainant, it is now contended by the complainant that, under ¶ 2, Ch. 51 of the statutes of the state (Cahill's St. 1925, ch. 51, ¶ 2), Baker, J. L. Hess and Hoy being parties to the suit, and as she claims, directly interested in its result, they were incompetent as witnesses, and that, as without their testimony the evidence failed to establish a resulting trust, but made out the complainant's cause of action, the decree should be reversed.

The statute, ¶ 2 (*supra*), provides that "No party to any civil action * * * or person directly interested in the event thereof, shall be allowed to testify therein of his own motion or in his own behalf * * * when any adverse party sues or defends as the * * * Administrator * * * of any deceased person, or as guardian * * * unless when called as a witness by such adverse party so suing or defending."

Section 2 of Chap. 51, Cahill's St. 1925, ch. 51, ¶ 2, has been considered many times. It has been held that the purpose of the statute is to protect estates

from the assault of strangers, and relates to proceedings wherein the decision would tend to reduce or ,impair it, *Pigg v. Carroll*, 89 Ill. 205; *Fleming v. Mills*, 182 Ill. 464; *Alward v. Woodward*, 315 Ill. 150, 162; that it was enacted to guard against the temptation to give false testimony, *Van Meter v. Goldfarb*, 317 Ill. 620; that at the time of the enactment of ¶ 2, the words "person having a direct interest in the event of such action, suit or proceeding," had a well-known meaning in the law of evidence, and that they were presumed to be used to express that meaning, *Off v. Trapp*, 109 Ill. App. 49; that ¶ 2 should be construed according to its spirit and not literally or technically, *Kitz v. Scudder Syrup Co.*, 199 Ill. App. 605; that generally where the parties to a transaction are living, they are, as to giving evidence, on a plane of equality, and each may testify, but when one is dead, the others are not permitted to give evidence, and thus take advantage of the heirs of the deceased, who may be wholly ignorant of the facts; that doubts are to be resolved in favor of the competency of a witness, *Christiansen v. Dunham Towing & Wrecking Co.*, 75 Ill. App. 267; that if the interest is of a doubtful nature, it goes to the credibility of the witness, and not to his competency, *Stephens v. Hoffman*, 263 Ill. 197; that an interest consisting of an inchoate dower right does not render a witness incompetent, *Pain v. Farson*, 179 Ill. 185; that the interest of a party will be determined by matters of substance, rather than by those of form, *Bardell v. Brady*, 172 Ill. 420; that if the interest is direct, certain and vested, its extent is immaterial, *Bellman v. Epstein*, 202 Ill. App. 247; that the interest must be a legal interest in the outcome of the suit, and be certain, direct, and immediate, *Ackman v. Potter*, 239 Ill. 578; *Flynn v. Flynn*, 283 Ill. 206; *Holland v. People's Bank & Trust Co.*, 303 Ill. 381; that the test of interest is whether the witness will gain or lose by the suit, or whether the verdict can be given

in evidence either for or against him in another suit. *Feitl v. Chicago City Ry. Co.,* 211 Ill. 279; *Jones v. Abbott,* 235 Ill. 220; *Barnes v. Earle,* 275 Ill. 381; *Bellman v. Epstein, supra;* that a witness whose interest is fixed and cannot be affected by the result of the suit, is competent, *Weaver v. Ritchie,* 152 Ill. App. 130; that the interest to be a disqualifying one, must be legal, certain and immediate, either in the result of the suit or in the record as an instrument of evidence in support of his own claims in another action, *Stephens v. Hoffman,* 263 Ill. 197; *Allen v. North,* 271 Ill. 190; that the interest must be present, certain and vested, and not an interest uncertain, remote or contingent, *Southern Collegiate Inst. of Albion v. In re Avery's Estate,* 157 Ill. App. 568; that where the adverse party sues in a representative capacity, a party defendant is not competent for his codefendant, even though not a necessary party and though he expressly waives the benefit of his testimony as to himself, *Sullivan v. Corn Products Ref. Co.,* 147 Ill. App. 227; that the interest of the party may lie solely in his liability for costs in the event of defeat, *Smith v. Smith,* 168 Ill. 488; that where A conveyed property to B, and then conveyed it to C, and C brought a bill against B's heirs to have the first conveyance set aside, A was not a competent witness against B's heirs, *McCann v. Atherton,* 106 Ill. 31; that the complainant in a cross bill is incompetent as a witness in her own behalf to establish a resulting trust, where those defending against such claim are heirs of her deceased husband, *Boyd v. Boyd,* 163 Ill. 611; that the complainant in a suit against the heirs at law, to compel a deed on the ground that their ancestor held in trust, is not a competent witness, *Holderman v. Gray,* 130 Ill. 443; and that defendants who seek to disprove the title of a deceased person whose heirs are asserting such title as the complainant's in a bill for partition, are not competent witnesses. *Wilson v. Wilson,* 158 Ill. 567.

Baker, J. L. Hess and Hoy were parties defendant to the original bill filed by the complainant as the administratrix and guardian, and they were, also, defendants to the cross bill of May Olive Hess, widow of the deceased.

At the time of Harry M. Hess' death on October 1, 1923, on the face of the writings that passed the title to the property to the Chicago Title & Trust Company, and expressly declared the interests of all the parties—one of which writings, the declaration of trust, was signed and sealed by the four whose interests represented the whole transaction, and the whole of the property—Harry M. Hess was admittedly and affirmatively stated to be the absolute owner of an undivided 1/10 interest in the whole of the trust estate. With the signed and sealed documentary evidence of the title and the mutual rights of the parties in that condition, and without any act on the part of Harry M. Hess, two days after his death, Hoy, J. L. Hess and Baker, executed a series of new documents, by which, on the face of them, they repudiated their former signed and sealed trust agreement, which set forth that Harry M. Hess owned an undivided 1/10 interest, and undertook to annul and wipe out their former written and sealed agreement that he was the owner of an undivided interest, and set up and declare that neither Harry M. Hess, nor his estate had any interest whatever in the property, but that they, Hoy, J. L. Hess, Baker and Mary Olive Hess, together, owned it all. In undertaking to justify their conduct, they were called to the stand by Mary Olive Hess, and permitted to testify that Harry M. Hess did not furnish any part of the consideration that was given for the property in question, when it was originally bought, and that the consideration for the undivided 1/10 interest which had been stated by the three to be in him, was furnished by Mary Olive Hess, and that at no time did he have any interest in the property. Of course, if

they had no right after his death to change the terms
of the trust so as to make Mary Olive Hess the bene-
ficiary, instead of Harry M. Hess, they violated their
authority in agreeing upon and designating her, a
stranger, as having a 1/10 interest in the trust estate,
and a court of equity properly guarding a minor's in-
terest, such as complainant's ward, would not allow
them to charge that interest with any part of the ex-
pense it cost to establish the trust in the Union Bank
of Chicago instead of the Chicago Title & Trust Com-
pany.

It is not practicable to set forth here even a reason-
able summary of all the testimony of Hoy, J. L. Hess
and Baker as to what transpired prior to the death of
Harry M. Hess in regard to the history of the purchase
of the property and the creation of the four trust es-
tates in Hoy, J. L. Hess, Baker and Harry M. Hess,
and then the creation of the four trust estates in the
first three and Mary Olive Hess.

The record shows that all three, Hoy, J. L. Hess
and Baker, were interested in the litigation and its
result in many ways. They were interested in explain-
ing why they had announced in a signed and sealed in-
strument that Harry M. Hess was the owner of an un-
divided one-tenth interest when they knew at the time,
according to their testimony, that he was not; they
were interested in explaining away the charge of
fraud, which was made in the bill and which the evi-
dence for the complainant suggested; they were in-
terested in the suit because if the complainant suc-
ceeded in proving that Harry M. Hess was at the time
of his death the owner of a one-tenth interest, they
would have to bear themselves alone the expense of
the transfers from the Chicago Title & Trust Com-
pany to Preschern, and from the latter to the Union
Bank of Chicago and the trustee's expense, provided
for in the trust deed, for the time intervening; they
were interested in the question whether or not they

would have to pay some part of the court costs involved in the litigation itself, for if the complainant succeeded, the three defendants, together with the cross-complainant, would be properly mulcted in costs; and they were interested in an effort to support the transfer of the property to Preschern and then to the Union Bank of Chicago because, according to their testimony, the transfer had permitted them to work out a saving by way of a large discount on an indebtedness of the trust estate. But whatever the reasons which moved them to make the change and to eliminate Harry M. Hess' heir as a beneficiary, they were directly interested in supporting the change which they had wrought. Further, where the total beneficial interest of an active trust is held by four different parties, and each interest is an undivided one, each beneficiary is directly interested in the other three and as to who they are; and especially is that true where, as here, any three may upon agreement change the trustee.

Inasmuch, therefore, as in our judgment the witnesses Baker, J. L. Hess and Hoy were incompetent, under the statute, to testify as to conversations and transactions had with Harry M. Hess in his lifetime, and as without their testimony, as it appears in the record, there is not sufficient evidence to support the claim of the cross-complainant, or to overcome the case made out by the complainant herself, the decree will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

HOLDOM and WILSON, JJ., concur.